UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VENDONET, INC., <br><br> Plaintiff, <br><br> v. <br><br> REDBOX AUTOMATED RETAIL, LLC, <br><br> Defendant. | No. 13 CV 3475 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff VendoNet, Inc. sued defendant Redbox Automated Retail, LLC for patent infringement. The asserted patent is U.S. Patent No. Reissue 43,656, titled "Vending Machine and Computer Assembly." The patent's asserted claims concern methods for giving vending machine customers access to a computer network such as the Internet. Currently at issue is claim construction: determining the meaning of certain words and phrases in the patent's claims.

**I.  Legal Standards**

Claim construction is a matter of law. *See Markman v. Westview Instruments*, 517 U.S. 370, 391 (1996); *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1358 (Fed. Cir. 2012). "A basic principle of claim construction is that the words of a claim are generally given their ordinary and customary meaning." *Source Vagabond Sys. v. Hydrapak, Inc.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)). The ordinary meaning is the "meaning that the term would

have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312–13. The person of ordinary skill is assumed to read the claim terms in the context of the entire patent, including the specification and the prosecution history. *Id.*; *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1195 (Fed. Cir. 2013).

A term will not be given its ordinary meaning if the patent applicants intended to give the term a special definition or disclaim its ordinary scope. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365–66 (Fed. Cir. 2012). There is "a heavy presumption that claim terms carry their full ordinary and customary meaning," rebutted only if the applicants "unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003); *see also Thorner*, 669 F.3d at 1366–67 (a "clear and unmistakable disclaimer" is required to meet this "exacting standard"). The scope of a prosecution disclaimer depends on the nature of the argument made by the applicants to the patent office during prosecution. *Cordis Corp. v. Medtronic AVE, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008). A disclaimer during prosecution of one patent can affect terms in a related patent if either (1) the disclaimer pertained to a common phrase; or (2) the disclaimer pertained to the common invention as a whole, regardless of the specific words used to claim it. *See Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1346–50 (Fed. Cir. 2004).

**II.     Analysis**

The '656 patent stems from a line of patent applications dating back to August 1995. '656 patent at 1.[1] Its named inventors are James A. Satchell, Jr. and Johnson A. Asumadu. *Id*. Its abstract states:

> A vending machine for purchasing selected items by a customer. The vending machine includes a dispensing assembly for dispensing an item and a selector assembly connected to the dispensing assembly. A computer assembly having a central computer, video display screen and a modem is connected to and actuated by the selector for connecting the computer to an Internet site and displaying a received transmission on the video screen in response to a purchased item.

*Id*. Plaintiff VendoNet owns the '656 patent. Dkt. 47 (amended complaint) ¶ 5. Defendant Redbox rents and sells DVDs through roughly 43,700 kiosks located in North America. Dkt. 48 (answer to amended complaint) ¶ 7.

The patent claims that VendoNet asserts against Redbox recite methods for providing vending machine customers with access to a computer network. Claim 38 is representative and contains all of the phrases that are presently disputed. Claim 38, which consists of a preamble followed by seven numbered steps, states in full (disputed phrases italicized):

> A method of providing a customer with access to *at least one of a website, a home page and a computer database* via a dispensing machine connectable to a communication network, said method comprising:
>
> 1) providing a dispensing machine with a connection to a communication network; and at least one of a video screen or an audio communication capability;

---

[1] Citations to the '656 patent are to Exhibit 1 from the joint appendix (Dkt. 26-1). Column *c*, row *r* of the patent is cited as *c:r*.

3

2) providing the dispensing machine with a storage element for storing *a plurality of physical items*;

3) actuating a money acceptor or credit card reader of the dispensing machine;

4) selecting a physical item to be dispensed from the dispensing machine from among the *plurality of physical items* contained in the storage element;

5) dispensing the selected physical item to the customer;

6) informing the customer through at least one of the video screen and the audio communication capability that the customer may access the communication network by activating a customer input device; and,

7) upon the customer's actuation of the customer input device, *permitting the customer to access the Internet/world wide web via the communication network in order to retrieve and/or send information to said website, said home page or said database.*

The present disputes are: (A) whether the preamble is a substantive limitation, and if so, its meaning; (B) the meaning of "a plurality of physical items"; (C) whether steps 4, 5, 6, and 7 must be performed in a specific order; and (D) the meaning of "permitting the customer to access the Internet/world wide web via the communication network in order to retrieve and/or send information to said website, said home page or said database."[2]

### A. The Preamble

Redbox argues that claim 38's preamble is limiting, meaning it should be treated just like the numbered claim elements and considered when determining

---

[2] The claim construction briefing consists of docket entries 25, 32, 41, 42-1, 49, and 51. On July 31, 2014, the parties jointly advised me that certain terms that were briefed do not need to be construed at this time. Dkt. 58. The parties further advised that they agree that "video screen" means "a screen that displays static or moving images." Dkt. 58. I adopt that definition of "video screen."

both infringement and validity. If the preamble is considered, Redbox asks me to construe the text "providing a customer with access to at least one of a website, a home page and a computer database via a dispensing machine." Redbox argues that this text requires that the dispensing machine be capable of providing access to *each of* (1) a website; (2) a home page; *and* (3) a computer database. According to Redbox, a dispensing machine that can provide access to one or two of the listed items, but not all three, is not covered by claim 38. Dkt. 32 at 12–13. VendoNet disagrees, both on whether the preamble is limiting, and on its meaning.

### 1. Whether the Preamble is Limiting

A preamble is not limiting—meaning it is ignored for purposes of infringement and validity—"where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1357 (Fed. Cir. 2014). But "when limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1372 (Fed. Cir. 2014) (internal brackets and quotation marks omitted). Redbox argues that the preamble—which mentions a website, a home page, and a database—is limiting because it provides the only antecedent basis for *said* website, *said* home page, and *said* database in step 7. Dkt. 32 at 10–11.

In support, Redbox cited two Federal Circuit cases in which a preamble was found to be limiting: *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361 (Fed. Cir.

5

2005) and *C.W. Zumbiel Co., Inc. v. Kappos*, 702 F.3d 1371 (Fed. Cir. 2012).[3] In those cases, the preamble added context and detail to a term that appeared in the claim body. In *Seachange*, the claim body referred to "*said* processor systems," but there was no antecedent basis for the processor systems, except in the preamble. The preamble stated that the claimed method was for storing data in a "distributed computer system" having "at least three processor systems," and specified that each "processor system" contained "at least one central processing unit" and "at least one mass storage subsystem." *Seachange*, 413 F.3d at 1376. The court used the additional context provided by the preamble to determine the meaning of "processor systems." *Id*. Similarly in *C.W. Zumbiel*, the term without antecedent basis was "container(s)," and the preamble specified that the containers (1) had a diameter; and (2) were arranged in two rows, with a top row and a bottom row. *C.W. Zumbiel*, 702 F.3d at 1385.

Here, the terms lacking antecedent basis are "*said* website," "*said* home page," and "*said* database." But the preamble sheds no light on the meaning of these terms, because it simply substitutes "a" for "said," without providing additional detail. '656 patent at 13:46–14:2. The preamble doesn't, for example, require that the website be interactive, or that the home page be accessible by the visually impaired.

---

[3] Redbox also cited *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) for the proposition that "the terms of a preamble are limiting when they serve as the antecedent basis for terms in the body of the claim." Dkt. 32 at 10. That is the same legal principle stated in *Innovasystems*, which I apply here. I further note that in *Catalina*, the Federal Circuit found the preamble *not* to be limiting where it was not "essential to understand limitations or terms in the claim body." *Catalina*, 289 F.3d at 810.

But, Redbox argues, the preamble *does* provide an additional limitation on the "dispensing machine" that is recited throughout the claim body. Dkt 32 at 12–13. Specifically, Redbox argues that the preamble requires that the "dispensing machine" be capable of providing a customer with access to *each of* (1) a website; (2) a home page; *and* (3) a computer database. Dkt. 32 at 12–13. Redbox cited no case in which (i) the preamble was found to be limiting because a term in the claim body lacked an antecedent basis; and then (ii) the preamble was used to determine the meaning of a *different* term in the claim body, not the term that lacked an antecedent basis. Nor has Redbox argued that the "dispensing machine" lacked an antecedent basis, thereby causing the claim body to recite something less than "a structurally complete invention." *See Braintree Labs.*, 749 F.3d at 1357.

Redbox also urges that the preamble is limiting because it "states a necessary and defining aspect of the invention," citing *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1343 (Fed. Cir. 2006). This argument is unavailing, because the "necessary and defining aspect" that Redbox points to is Internet access (*see* Dkt. 32 at 11–12), which is already provided for by step 7.

I therefore find that the preamble to claim 38 is not limiting.

### 2. The Meaning of Preamble

Even if I had concluded that the preamble is limiting, I would not have adopted Redbox's proposed limitation on the "dispensing machine." As mentioned earlier, Redbox argues that the text "providing a customer with access to at least one of a website, a home page and a computer database via a dispensing machine" requires the dispensing machine be capable of providing a customer with access to

*each of* (1) a website; (2) a home page; *and* (3) a computer database. Dkt. 32 at 12–13. According to Redbox, a dispensing machine that can provide access to one or two of the listed items, but not all three, is not covered by claim 38. Dkt. 32 at 12–13.

In support, Redbox cites *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 885–88 (Fed. Cir. 2004). The relevant patent in *SuperGuide* concerned on-screen television programming guides, which display information about current and upcoming programs. *Id*. at 873. Claim 1 of the relevant patent stated, in part:

> An online television program schedule system comprising:
>
> first means for storing *at least one of* a desired program start time, a desired program end time, a desired program service, and a desired program type;
>
> means for receiving television program schedule information, said television program schedule information comprising *at least one of* program start time, program end time, program service, and program type for a plurality of television programs;
>
> second storing means, connected to said first storing means and said receiving means, for storing selected portions of received television program schedule information which *meet at least one of* the desired program start time, the desired program end time, the desired program service, and the desired program type; and . . . .

*Id*. at 884 (emphasis in original). The Federal Circuit affirmed a construction of "at least one of" that required at least one value from *each* of the categories (program start time, program end time, program service, and program type). *Id*. at 885. It did so in part because such a construction was required for the invention to serve its purpose. *Id*. The court also opined that such a construction was grammatically correct, according to *The Elements of Style*. *Id*. at 886. But the court did not announce that its rule of grammar was a mandatory rule of claim construction, to

8

be used even when unnecessary to serve the purpose of the invention. Subsequently, several district courts, including courts in this district, have rejected *SuperGuide*'s grammatical rule where the resulting construction would be inconsistent with other parts of the patent.[4]

VendoNet argues that Redbox's proposed construction is inconsistent with step 7. Dkt. 25 at 3. Step 7 requires that the customer be able to send information to, or receive information from, a website, a home page, *or* a database. '656 patent at 14:1–2. Step 7, which uses "or" rather than "and," is satisfied even where the customer is given access only to one item—say a home page, but not a database. Redbox responds that there is no inconsistency because "[t]he preamble describes the *capability*" of the dispensing machine, "whereas step 7 describes the customer choosing to access one of the three" options. Dkt. 32 at 13 (emphasis in original). But claim 38 is not written from the perspective of a customer, and nothing in the claim requires that the customer be given a choice. In contrast, claim 33 specifically requires that the customer choose, referring to a "website of the customer's choice." '656 patent at 13:26–28. I will not assume that claim 38, which doesn't contain similar language, requires that the customer be given a choice. *Cf. Liebel-Flarsheim Co. v. Medrad*, Inc., 358 F.3d 898, 909–10 (discussing the doctrine of "claim differentiation"). Moreover, Redbox's view is inconsistent with the specification,

---

[4] *See, e.g.*, *Rowe Int'l Corp. v. Ecast, Inc.*, 500 F.Supp.2d 891, 909 (N.D. Ill. 2007); *Pinpoint Inc. v. Amazon.com*, 2004 U.S. Dist. LEXIS 17641, at *50–51 (N.D. Ill. 2004); *Orion IP, LLC v. Staples, Inc.*, 406 F.Supp.2d 717, 726 & n.3 (E.D. Tex. 2005); *Joao v. Sleepy Hollow Bank*, 348 F.Supp.2d 120, 124 (S.D.N.Y. 2004); *Power-One, Inc. v. Artesyn Techs., Inc.*, 2007 U.S. Dist. LEXIS 20458, at *42–43 (E.D. Tex. 2011).

which states that some embodiments of the invention give the customer access to *pre-programmed* websites, such as the website of the owner of the dispensing machine. '656 patent at 4:32–40. *Cf. Power-One*, 2007 U.S. Dist. LEXIS 20458, at *42–43 (rejecting the *SuperGuide* grammatical rule where "the specification teaches embodiments that do not require each category of the enumerated set"); *Orion IP*, 406 F.Supp.2d at 726 & n.3.

Therefore, the preamble does not limit the claim, but even if it did, I would not construe it as Redbox proposes. Instead, the dispensing machine referred to in the preamble can access any one of the items listed (a website, a home page, a computer database)—the ability to access more than one is permitted, but not required.

### B. A Plurality of Physical Items

VendoNet argues that the phrase "a plurality of physical items" requires at least two items that are not of the same type. VendoNet's view of "type" is very specific: a can of Coke is a different "type" of item than a can of Pepsi. Thus, VendoNet argues that claim 38 covers a machine that can dispense both Coke and Pepsi, but not one that can only dispense Coke. Dkt. 41 at 12. The plain meaning of the words does not compel VendoNet's view, and VendoNet does not argue that it does. Instead, VendoNet's argument is based on the text of step 4: "selecting a physical item to be dispensed from the dispensing machine from among the plurality of physical items contained in the storage element." '656 patent at 13:57–59. According to VendoNet, unless the machine is required to contain items of different types, step 4 is mere surplusage. Dkt. 25 at 5.

VendoNet's argument is unpersuasive. First, even as VendoNet reads it, step 4 would be surplusage only if the items were *required* to be of the same type. But the plain meaning, which Redbox urges, permits the items to be either of the same type or of different types. In other words, even under Redbox's proposed construction, a machine *can* store items of different types, in which case VendoNet would concede that step 4 is required, not surplusage. Second, step 4 recites "selecting a physical item," not "selecting a type of item." And step 5 recites dispensing "*the* selected physical item" not "a physical item of the selected type." '656 patent at 13:60 (emphasis added). Thus, even if the machine contained only items of the same type, a *specific* item must be selected and dispensed. Step 4 is therefore not surplusage as long as the machine contains more than one item, regardless of whether it contains items of different types.

Moreover, while claim 38 uses the language "a plurality of physical items," the specification in at least one place refers to "a plurality of *different* items." '656 patent at 3:24–25 (emphasis added). The distinction demonstrates that the applicants intended "a plurality of physical items" to carry its plain meaning—requiring more than one item, but not requiring that the items be of different types.

### C. The Order of Steps 4, 5, 6, and 7

Redbox argues that steps 4, 5, 6, and 7 must be performed in numerical order. Dkt. 32 at 14–17. The "general rule" is that the steps of a method need not be performed in any particular order. *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008). But an order can be imposed if the words of the claim, the specification, or the prosecution history require it. *Id.* Because step 5

11

requires dispensing *the selected* physical item, it must happen after step 4 (in which a physical item is selected). '656 patent at 13:57–60. The real dispute concerns the order of steps 5, 6, and 7.[5]

Redbox first argues that the order it seeks to impose is "logical." Dkt. 32 at 14. It is true that following the steps in numerical order produces a logical result. But so does following any order that permits each step to perform its individual function, and the steps collectively to complete the method as a whole. Redbox did not attempt to show that other orders, aside from numerical, are illogical. Redbox next argues that examples in the specification show the steps being performed in numerical order. Dkt. 32 at 15. But examples are just that. Without a statement that the order is important, or a disclaimer of any other order, examples do not warrant imposition of an order. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369–71 (Fed. Cir. 2003).

Finally, Redbox argues that the patent applicants "disclaimed a broader construction of the order of the steps in claim 38 to overcome prior art." Dkt. 32 at 15. Redbox's disclaimer argument is as follows. On August 31, 2011, the patent examiner rejected what would become claim 38 as obvious over two prior art patents. Dkt. 26-4 (prosecution history) at 656FH000326. One of the prior art patents was U.S. Patent No. 5,953,504, issued to Wayne G. Sokal *et al.*, which is directed at public computer terminals that provide pay-per-use Internet access. *Id.*

---

[5] VendoNet argued that I should not consider where in the sequence step 7 must fall, because Redbox did not timely raise that issue. Dkt. 41 at 8. But the parties fully developed the issue in their briefs, so I consider it now.

The computers described in Sokal are attached to printers, so users can receive printouts. *Id.* Interpreted broadly, printouts can be considered physical items that are "dispensed." Dkt. 26-3 (prosecution history) at 656FH000158.

On December 30, 2011, the applicants attempted to distinguish claim 38 from Sokal on three grounds, the third of which is relevant here. The applicants stated:

> Thirdly, <u>after</u> the dispensing of step 5., the customer is permitted to access the communication network in order to retrieve and/or send information to said website, home page or database". Sokal's printing of the information on the paper always precedes the customer access to site sever **12**. Otherwise, Sokal would not be "dispensing" blank sheets of paper.

Dkt. 26-3 (prosecution history) at 656FH000159 (emphasis in original).[6] By underlining the word "after," and discussing the order of steps in Sokal, the applicants clearly and unmistakably announced that, in their invention, the dispensing step (step 5) precedes the network access step (step 7). Thus, applying prosecution disclaimer, I find that claim 38 requires that step 5 precede step 7. Because the applicants did not disclaim a broad construction of the permissible order in which step 6 could occur, I find there is no sequential limitation with respect to that step.[7]

VendoNet argues that the applicants' December 30, 2011 comments do not constitute a clear and unmistakable disclaimer when read in light of the subsequent

---

[6] Because prosecution disclaimer turns on the clarity of the alleged disclaimer, I have inserted the relevant passage verbatim, including what appear to be typographical errors.

[7] Redbox also pointed to statements made by the applicants during prosecution of a related patent, U.S. Patent No. Reissue 41,543. Dkt. 32 at 16–17. But Redbox did not show that the alleged disclaimer pertained to either a common phrase or to the common invention as a whole, regardless of the specific words used to claim it. *See Multi-Tech Sys.*, 357 F.3d at 1346–50.

prosecution history. Dkt. 41 at 9–11; *see Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1342 (Fed. Cir. 2009) ("Even if an isolated statement appears to disclaim subject matter, the prosecution history as a whole may demonstrate that the patentee committed no clear and unmistakable disclaimer."). Specifically, VendoNet notes that before April 25, 2012, claim 38 recited step 5 (the dispensing step), explicitly said "and thereafter," and then recited step 6 (the informing step). Dkt. 41 at 10. But on April 25, 2012, the applicants deleted "and thereafter," thereby removing the explicit requirement that step 6 follow step 5. Dkt. 26-2 (prosecution history) at 656FH000114–23. VendoNet also notes that the applicants argued to the examiner that while some of the patent claims require that the dispensing step precede the network access step (step 7), "not all claims are so limited . . . ." Dkt. 41 at 9. Thus, VendoNet argues, the applicants specifically amended claim 38 to remove a limitation on the order, and drew attention to that change, undermining the argument that the prosecution history clearly and unmistakably requires step 5 to precede step 7.

Prosecution disclaimers can be rescinded, but the rescission must be "sufficiently clear to inform the examiner that the previous disclaimer, and the prior art that it was made to avoid, may need to be re-visited." *Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313, 1318 (Fed. Cir. 2007). The applicants' April 2012 submission does not meet this standard. First, the submission did not comply with the regulations requiring marked-up text, so the deletion of "and thereafter" is not readily apparent. Dkt. 26-2 (prosecution history) at 656FH000117–18; 37 C.F.R.

§ 1.121(c)(2)(requiring square brackets or strike-through text to show deletions).[8] Second, while the applicants argued that *not all* claims required that step 5 precede step 7, they explicitly acknowledged that some claims did. Dkt. 26-2 (prosecution history) at 656FH000122. And they did not specifically say whether claim 38 did or did not have such a requirement: The applicants did not refer to claim 38 or the "and thereafter" language; instead, they referred to claim 57 and the language "after dispensing." Dkt. 26-2 (prosecution history) at 656FH000122. I therefore find that the December 2011 disclaimer was not rescinded by the April 2012 submission, because that submission was not "sufficiently clear to inform the examiner that the previous disclaimer, and the prior art that it was made to avoid, may need to be revisited." *See Hakim*, 479 F.3d at 1318; *see also Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) (disclaimer not rescinded where the applicant "never retracted any of his statements").

I therefore construe claim 38 to require that step 4 precede step 5, and step 5 precede step 7. There is no limitation on where in the sequence step 6 may fall.

### D. "Permitting the Customer to Access the Internet/World Wide Web Via the Communication Network in Order to Retrieve and/or Send Information to said Website, said Home Page or said Database."

The parties dispute what it means for a customer to "access" the Internet and be able to "retrieve and/or send" information to a website, home page, or database. Redbox argues that customers must have the ability to "surf"—that is, to choose a

---

[8] Earlier submissions from the applicants *did* comply with the regulation. *See, e.g.*, Dkt. 26-4 (prosecution history) at 656FH000354–67.

15

website. Dkt. 32 at 5. VendoNet disagrees, and argues that sending email is sufficient. Dkt. 41 at 2–3.

Redbox argues that "the specification shows that the invention allows the customer to navigate or browse the Internet." Dkt. 32 at 5. But Redbox errs by focusing too broadly—on "the invention" as a whole, rather than as delineated in claim 38. The applicants disclosed embodiments providing a range of levels or types of network access. For example:

- Claim 13 requires that the customer be able to "view" information from an internet site, website, or home page. '656 patent at 12:20–23.

- Claim 17 requires the capability of "two-way multimedia interactive communication with a customer." '656 patent at 12:34–37.

- Claim 46 requires that the customer be permitted to connect to a "predetermined" website that was selected by the owner or operator of the dispensing machine, or the manufacturer of the physical item dispensed. '656 patent at 14:42–44.

- Claim 47 requires "interaction of the customer with the Internet/world wide web . . . ." '656 patent at 14:60–61.

The applicants thus knew how to claim varying levels of interactivity between the customer and the Internet. Like the claims, the specification discusses both "interactive access to the internet" ('656 patent at 2:15) and the more limited concept of connecting to the pre-selected website of the owner or operator of the dispensing machine ('656 patent at 4:32–40). The fact that the applicants used different words to describe varying levels of interactivity undermines Redbox's argument that simply providing "access" and allowing the sending or receiving of

information requires claim 38 to mean "surf" the Internet.[9] *See Cordis Corp.*, 511 F.3d at 1173–74 (where patent disclosed both "complete slots" and "half-slots," the term "slots" encompassed both).

Furthermore, claim 24 specifically requires a machine that includes "software for browsing the Internet." '656 patent at 12:56–57. Because claim 24 depends from claim 14, the doctrine of claim differentiation implies that the machine of claim 14 *does not* include software for browsing the Internet. *Liebel-Flarsheim*, 358 F.3d at 909–10. Thus, the invention as a whole encompasses embodiments both with and without software for browsing the Internet, contrary to Redbox's argument that browsing capabilities are a required part of the invention, no matter how it is specifically claimed. Similarly claim 40, which depends indirectly from claim 38, requires that the customer be "provided with access to a website." '656 patent at 14:5–6. The doctrine of claim differentiation thus implies that claim 38 does not require the customer be provided with access to a website. *Liebel-Flarsheim*, 358 F.3d at 909–10. And the applicants were explicit when they wanted to be: claim 33 explicitly requires that the customer have access to a "website of the customer's choice." '656 patent at 13:26–28. Redbox has not given me a good reason to assume that every claim, no matter its specific language, includes that requirement implicitly.

---

[9] In its reply brief, Redbox argues that "the patent does not disclose merely inputting an email address as accessing the Internet." Dkt. 42-1 at 1. Whether Redbox is correct is not a question of claim construction, it's a question of invalidity due to an inadequate written description—an issue not before me at this stage, on which Redbox bears the burden of proof by clear and convincing evidence. *See, e.g., Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1191–92 (Fed. Cir. 2014).

Redbox's prosecution disclaimer argument is also unpersuasive. According to Redbox, "the applicants repeatedly argued that the invention allowed a customer the choice of selecting websites to navigate or browse." Dkt. 32 at 7. But as VendoNet pointed out in reply (Dkt. 41 at 1, 3–5), Redbox cited to statements that the applicants made concerning *different* claims, having materially different language. *See* Dkt. 26-4 (prosecution history) at 656FH000227 (discussing application claims 19–21, 24–29, and 31), 656FH000151–52 (discussing application claim 59). The claims being discussed in the cited prosecution history explicitly stated that "the customer may choose" the website, home page, or database to be accessed. Dkt. 26-3 (prosecution history) at 656FH000149; Dkt. 26-4 (prosecution history) at 656FH000227; Dkt. 26-4 (prosecution history) at 656FH000315. The applicants' arguments do not constitute a clear and unmistakable disclaimer of any scope for claims, such as claim 38, that *do not* explicitly give the customer a choice. Redbox also discussed the prosecution history of a different (but related) patent, but did not show that the alleged disclaimers were directed at common claim terms or at the invention as a whole, regardless of the specific language used. Dkt. 29-2 at 543FH002165–66 (discussing claim of U.S. Patent No. Reissue 41,543 that required access to "the Internet and websites," where "access" specifically included "customer input of data to the computer"); *see Multi-Tech Sys.*, 357 F.3d at 1346–50.

In its surreply, Redbox argued that the applicants, when discussing the claims and claim terms relevant to the present case, "expressly incorporated" their discussion concerning other claims and patents. Dkt. 42-1 at 4. But on the page

18

Redbox cites, the applicants explained in detail why, in their view, the examiner was wrong to reject claim 38. Dkt. 26-3 (prosecution history) at 656FH000157. As Redbox points out, the applicants also said that "[t]he deficiencies of [a prior art patent] have been explained above." *Id*. Even if that "expressly incorporated" their prior discussion, it does not rise to the level of a "clear and unmistakable" disclaimer, as required. *See Thorner*, 669 F.3d at 1366–67.

I therefore reject Redbox's suggestion that the customer is required to be able to "surf" the Internet. Having so concluded, it is unclear whether the term "permitting the customer to access the Internet/world wide web via the communication network in order to retrieve and/or send information to said website, said home page or said database" needs further construction at this point. I understand that claim construction is a "matter of resolution of disputed meanings and technical scope," not "an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). But I am also mindful that a "determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). I am also aware of the policy in this district of encouraging the "parties to focus upon outcome-determinative or otherwise significant" claim construction disputes, the resolution of which "may lead to settlement or early summary judgment." Comment to LPR4.1. I believe that I have resolved the parties'

dispute: Redbox will not be permitted to argue, either in briefing or to the jury, that customers must be able to choose their own website or "surf" the Internet. The parties are directed to meet and confer and inform me whether further construction of this claim term is required at this stage.

### III. Conclusion

For the reasons set forth above, I resolve the present claim construction disputes as follows:

1. Claim 38's preamble is not limiting.
2. "A plurality of physical items" means "more than one item, whether or not they are of the same type."
3. In claim 38, step 4 must precede step 5, and step 5 must precede step 7. There is no limitation on where in the sequence step 6 may fall.
4. "Permitting the customer to access the Internet/world wide web via the communication network in order to retrieve and/or send information to said website, said home page or said database" does not require that the customer be able to choose his own website or "surf" the Internet.

ENTER:

Manish S. Shah
United States District Judge

Date: 9/15/14