UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VENDONET, INC., <br><br> Plaintiff, <br><br> v. <br><br> REDBOX AUTOMATED RETAIL, LLC, <br><br> Defendant. | No. 13 CV 3475 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

The initial claim construction opinion and order in this case held, in part, that: "In claim 38, step 4 must precede step 5, and step 5 must precede step 7. There is no limitation on where in the sequence step 6 may fall." Plaintiff, VendoNet, Inc., asks me to reconsider that ruling. VendoNet urges that the correct construction does not limit step 7 to being performed only after step 5. As discussed below, VendoNet repeats arguments it made previously, and those arguments remain unpersuasive. VendoNet's motion for reconsideration is therefore denied.

Also, the parties have requested construction of a term not previously construed: "input device." I adopt a construction apparently agreed upon by the parties: "a device, such as, but not limited to, a selector button, a keyboard, a trackball, or some combination of the foregoing, which enables a customer to enter information." Because the issue is not ripe for ruling, I do determine whether "input device" encompasses the DVD return slots on Redbox's kiosks.

I.   **Legal Standards**

In the context of claim construction, a motion for reconsideration may be raised at any stage of the case. *See, e.g., Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002); *see also* Fed. R. Civ. P. 54(b). A motion to reconsider serves an important function where the "court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)).

As described in the earlier opinion, claim construction is a matter of law. *See Markman v. Westview Instruments*, 517 U.S. 370, 391 (1996); *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1358 (Fed. Cir. 2012). "A basic principle of claim construction is that the words of a claim are generally given their ordinary and customary meaning." *Source Vagabond Sys. v. Hydrapak, Inc.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)). The "heavy presumption that claim terms carry their full ordinary and customary meaning," is rebutted if the applicants "expressly relinquished claim scope during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003); *see also Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366–67 (Fed. Cir. 2012) (a "clear and unmistakable disclaimer" is required to meet this "exacting standard"). The scope of

a prosecution disclaimer depends on the nature of the argument made by the applicants to the patent office during prosecution. *Cordis Corp. v. Medtronic AVE, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008). A disclaimer during prosecution of one patent can affect terms in a related patent if either (1) the disclaimer pertained to a common phrase; or (2) the disclaimer pertained to the common invention as a whole, regardless of the specific words used to claim it. *See Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1346–50 (Fed. Cir. 2004).

## II. Analysis

The '656 patent concerns vending-machine technology. The abstract reads:

> A vending machine for purchasing selected items by a customer. The vending machine includes a dispensing assembly for dispensing an item and a selector assembly connected to the dispensing assembly. A computer assembly having a central computer, video display screen and a modem is connected to and actuated by the selector for connecting the computer to an Internet site and displaying a received transmission on the video screen in response to a purchased item.

'656 patent at 1.[1] The patent claims that VendoNet asserts against Redbox recite methods for providing vending-machine customers with access to a computer network. Representative claim 38, which consists of a preamble followed by seven numbered steps, states in full (disputed phrase italicized):

> A method of providing a customer with access to at least one of a website, a home page and a computer database via a dispensing machine connectable to a communication network, said method comprising:

---

[1] Citations to the '656 patent are to [26-1]. Column *c*, row *r* of the patent is cited as *c:r*.

1) providing a dispensing machine with a connection to a communication network; and at least one of a video screen or an audio communication capability;

2) providing the dispensing machine with a storage element for storing a plurality of physical items;

3) actuating a money acceptor or credit card reader of the dispensing machine;

4) selecting a physical item to be dispensed from the dispensing machine from among the plurality of physical items contained in the storage element;

5) dispensing the selected physical item to the customer;

6) informing the customer through at least one of the video screen and the audio communication capability that the customer may access the communication network by activating a customer *input device*; and,

7) upon the customer's actuation of the customer *input device*, permitting the customer to access the Internet/world wide web via the communication network in order to retrieve and/or send information to said website, said home page or said database.

The present disputes are: (A) whether step 7 must be performed after step 5; and (B) the meaning of "input device."

### A. VendoNet's Motion for Reconsideration (Whether Step 7 Must Be Performed After Step 5)

In the initial claim construction opinion and order, I held that: "In claim 38, step 4 must precede step 5, and step 5 must precede step 7. There is no limitation on where in the sequence step 6 may fall." [60] at 20. VendoNet asks me to reconsider that ruling, urging that the correct construction does not limit step 7 to being performed only after step 5. [62]. VendoNet's arguments do not establish any misunderstanding or misapprehension on my part, and no change in law or facts has occurred.

First, VendoNet argues that the "specification does not limit performance of step 7 (permitting access) to occurring after step 5 (dispensing)." [62] at 2. VendoNet made the same argument in its opening claim construction brief ([25] at 6) and in its reply brief ([41] at 8–9). The argument is unconvincing because the requirement that step 7 follow step 5 comes not from the specification, but from a disclaimer made by the patent applicants during prosecution. *See* [60] at 12–13.

VendoNet argues that the applicants did not disclaim a broader construction. [62] at 5. I concluded otherwise in the original claim construction opinion, and VendoNet has not convinced me that doing so was erroneous. On August 31, 2011, the patent examiner rejected what would become claim 38 as obvious over two prior art patents. [26-4] at 656FH000326. One of the prior art patents was U.S. Patent No. 5,953,504, issued to Wayne G. Sokal *et al.*, which is directed at public computer terminals that provide pay-per-use Internet access. *Id.* The computers described in Sokal are attached to printers, so users can receive printouts. *Id.* Interpreted broadly, printouts can be considered physical items that are "dispensed." [26-3] at 656FH000158.

As explained in the prior opinion, on December 30, 2011, the applicants attempted to distinguish claim 38—the specific claim under construction here—from Sokal. The applicants stated in relevant part:

> Thirdly, <u>after</u> the dispensing of step 5)., the customer is permitted to access the communication network in order to retrieve and/or send information to said website, home page or database". Sokal's printing of the information on the paper always precedes the customer access to site sever **12**. Otherwise, Sokal would not be "dispensing" blank sheets of paper.

5

[26-3] at 656FH000159 (emphasis and typographical errors in original). By underlining the word "after," and discussing the order of steps in Sokal, the applicants clearly and unmistakably announced that, in their invention, the dispensing step (step 5) precedes the network access step (step 7). VendoNet argues that this passage should be read simply to say that the applicants' invention was not *limited* to performing step 5 *after* step 7—meaning step 5 could be performed before, after, or simultaneous with step 7. [62] at 5. But that's not what was written. Moreover, that would not have adequately distinguished Sokal. *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008) (there is a "long-established rule that claims which are broad enough to read on obvious subject matter are unpatentable even though they also read on nonobvious subject matter.") (internal marks omitted); *AstraZeneca LP v. Breath Ltd.*, 542 Fed.Appx. 971, 982 (Fed. Cir. 2013) ("[B]roader claims are necessarily invalid where narrower claims have been found to be obvious.") (citing *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007)). Applicants' December 30, 2011 statements amount to a disclaimer, and step 7 must therefore be performed after step 5.[2]

---

[2] *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366 (Fed. Cir. 2007) is not to the contrary. In that case, the Federal Circuit reversed a finding of prosecution history disclaimer because: (1) the construction given by the district court, on account of the supposed disclaimer, was not supported by the patent specification; (2) the same prosecution document contained other, contradictory statements, which created ambiguity; (3) the defendant's own technical witness did not understand how the system would operate consistent with the supposed disclaimer; and (4) a device constructed in accordance with the disclaimer would be inoperable. *Id.* at 1372–73. Such circumstances are not present here. The specification, while not specifically limited to a sequence, is not inconsistent with a sequential requirement; there is no ambiguity in the same prosecution document; and no showing has been made that the system cannot work in accordance with the disclaimer.

VendoNet argues that the disclaimer was rescinded, because the applicants' April 2012 submission was a "clear correction that the examiners accepted." [62] at 4. VendoNet relies on the following facts:

- Before April 2012, claim 38 recited step 5 (the dispensing step), explicitly said "and thereafter," and then recited step 6 (the informing step);

- In April 2012, the applicants deleted "and thereafter";

- Also in April 2012, the applicants told the examiner that some of the patent claims require that the dispensing step (step 5) precede the network access step (step 7), but "not all claims are so limited"

[62] at 2–4. Thus, VendoNet argues, the applicants specifically amended claim 38 to remove a limitation on the order, and drew attention to that change, undermining the argument that the prosecution history clearly and unmistakably requires step 5 to precede step 7. All of this was previously argued by VendoNet and considered by me. [41] at 10; [60] at 14–15. I remain unpersuaded by VendoNet's arguments.

The applicants' April 2012 submission did not clearly inform the examiner that the previous disclaimer may need to be revisited. *See Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313, 1318 (Fed. Cir. 2007). Telling the examiner that some claims, but not all claims, require step 7 to follow step 5 is in no way a clear statement that *claim 38 specifically* does not contain that requirement. That is especially so considering the applicants were not discussing claim 38, they were discussing claim 57. [26-2] at 656FH000122. And the deletion of "and, thereafter" did not clearly rescind the disclaimer because the applicants did not draw attention to that change. In the initial claim construction opinion, I stated that the applicants should have drawn attention to the deletion by complying with 37 C.F.R.

7

§ 1.121(c)(2). [60] at 14–15. VendoNet correctly points out that those regulations apply to amendments made in applications *other than reissue applications*, and thus did not govern the prosecution here. [62] at 3. Nonetheless, for the deletion of "and, thereafter" to have rescinded the December 2011 disclaimer about claim 38 (as VendoNet now argues it did), the applicants needed to draw attention to the deletion so that the examiner would know "that the previous disclaimer, and the prior art that it was made to avoid, may need to be re-visited." *Hakim*, 479 F.3d at 1318. The applicants failed to so alert the examiner through any means, and thus did not rescind their prior disclaimer.

Accordingly, VendoNet's motion for reconsideration is denied.

### B. Construction of "Input Device"

Redbox proposed the following construction of "input device": "a device, such as selector buttons, a keyboard, a trackball, or some combination of the foregoing, which enables a customer to enter information." [66] at 5. VendoNet agreed with that construction, provided that the list of devices is understood to be non-exhaustive. [67] at 1–2. I agree with VendoNet that the list is non-exhaustive, for three reasons. First, the words "such as" suggest a non-exhaustive list. Second, the patent specification discloses other ways for a customer to interact with the vending machine. *See* '656 patent at 2:48–52 (mouse); 7:40–43 (same); 3:8–14 (camera or microphone); 5:47–59 (same); 7:44–49 (same); 10:12–14 (same); 5:43–46 (CD-ROM or diskette drive); 6:65–7:2 (same). Third, claim 33 includes the "input device" requirement, and claim 36 adds that "the customer input device is at least one selected from the group consisting of a keypad, trackball and mouse." '656 patent at

13:14–17, 40–42. The doctrine of claim differentiation therefore suggests that "input device" encompasses keypads, trackballs, and mice, but is not limited to those devices. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 909–10 (Fed. Cir. 2004). Thus, an "input device" is "a device, such as, but not limited to, a selector button, a keyboard, a trackball, or some combination of the foregoing, which enables a customer to enter information."[3]

The parties dispute whether "input device" encompasses the DVD return slots on Redbox's kiosks. *See* [66] at 1. That question is not properly before me at this point. The Federal Circuit has made clear that a patent infringement analysis proceeds in two separate steps: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011). Pertaining to the first step (claim construction), the Federal Circuit has stated: "A claim is construed in the light of the claim language[,] not in light of the accused device." *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1367 (Fed. Cir. 2008). Also, the Federal Circuit has specifically stated that "claims are not construed 'to cover' or 'not to cover' the

---

[3] The parties did not brief what is required for a customer to be said to have "entered information." However, Redbox did argue that "the purpose of the input device is to allow a user to enter the addresses of the Internet Websites or home pages into the computer for connecting the computer with an Internet address." [66] at 5. I do not construe "input device" to require that a customer be able to enter an Internet address. As discussed in the original claim construction opinion, not all of the claimed embodiments require that the customer be able to choose which Internet address to visit. *See* [60] at 9–10, 16–17. For example, some embodiments simply connect the customer to a "predetermined" website that was selected by the owner or operator of the vending machine, or the manufacturer of the physical item dispensed. *See* [60] at 16; '656 patent at 7:28–33; 14:41–47.

accused device. That procedure would make infringement a matter of judicial whim. It is only after the claims have been construed without reference to the accused device that the claims, as so construed, are applied to the accused device to determine infringement." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc).

In its brief, VendoNet submitted "extrinsic evidence": pictures of the DVD return slot on the Redbox kiosks. [67-2]. That "extrinsic evidence" does not bear on the meaning of "input device," it only bears on whether Redbox's DVD return slots fall within that meaning. In other words, it bears on the second step of the infringement analysis. Neither party moved for summary judgment on the issue of infringement. Even if a party had done so, the record concerning the appearance and operation of the DVD return slots on Redbox's kiosks is insufficient to permit a ruling. Whether the Redbox kiosks' DVD return slot (or any other component) falls within the meaning of "input device" (or any other claim term) is an issue for another day.

### III. Conclusion

For the reasons set forth above, VendoNet's motion for reconsideration is denied. Further, "input device" is construed to mean "a device, such as, but not limited to, a selector button, a keyboard, a trackball, or some combination of the foregoing, which enables a customer to enter information."


ENTER:

                                                 Manish S. Shah
                                                 United States District Judge

Date: 1/8/15